```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND

PAULA GOFFE,                        :

      Plaintiff,                    :

v.                                  :
                                        Civil Action No. GLR-15-695
JOHNS HOPKINS HEALTH SYSTEM         :
CORPORATION,
                                    :
      Defendant.
                                    :
```

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant's, Johns Hopkins Health System Corporation ("JHHSC"), Motion to Dismiss. (ECF No. 6). Plaintiff Paula Goffe brings this action against her former employer, JHHSC, alleging employment discrimination based on her race, religion, and "health status" and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq. (2012) (Count I), wrongful termination (Count II), and intentional infliction of emotional distress (Count III). (ECF No. 2). The Motion is ripe for disposition. Having considered the Motion and supporting documents, the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, JHHSC's Motion will be granted in part and denied in part.

## I. BACKGROUND[1]

Goffe, a resident of Maryland, is formerly an employee of JHHSC, a Maryland corporation. On February 26, 2013, Goffe filed a worker's compensation claim for an unspecified injury and was on leave from that date until May 28, 2013. When Goffe returned to work on May 29, 2013, Goffe found that her direct manager was Jeff Ostrow. Goffe is a Seventh-Day Adventist and did not drink alcohol or go to bars with her co-workers. Ostrow made comments that he was "God," teased her for listening to gospel music, and stated there would be no more worker's compensation claims. Goffe was required to move to a new office isolated from the co-workers in her department and used as a storage area for chairs and trash cans. While she was moving her items in a cart to the new office, Ostrow said she might be homeless. She was followed by her co-workers who documented her arrival and departure times. She alleges these events occurred because she filed a worker's compensation claim.

On February 21, 2014, Goffe met with Ostrow for a performance evaluation. During the evaluation, Ostrow informed Goffe that she needed improvement in several areas. Goffe alleges that her white co-workers were not given similar evaluations when they failed to perform their duties. When Goffe challenged the evaluation, Ostrow tore it up and stated he would redo it. Since Goffe could not sign

---

[1] Unless otherwise noted, the following facts are alleged in the Complaint (ECF No. 2).

the evaluation, she was told to submit to a Fitness for Duty Evaluation or be terminated immediately.  To complete the evaluation, Goffe states she scheduled several appointments and met with several evaluators.  It is unclear from the Complaint whether Goffe completed the Fitness for Duty Evaluation.  Goffe alleges that her white co-workers were not required to complete a Fitness for Duty Evaluation.  At an unspecified time, Goffe filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and received a right to sue notice.

On February 15, 2015, Goffe initiated this action in the Circuit Court for Baltimore City, Maryland.  (ECF No. 2).  On March 12, 2015, JHHSC removed the action to this Court based on federal question jurisdiction under 28 U.S.C. § 1331 (2012).  (ECF No. 1). On March 19, 2015, JHHSC filed a Motion to Dismiss.  (ECF No. 6). On March 23, 2015, Goffe filed a response to the Motion.[2]  (ECF No. 8).  On April 9, 2015, JHHSC filed a reply to Goffe's response. (ECF No. 11).

---

[2] Goffe attached an amended complaint to her response (ECF No. 8-2), which altered Count I by replacing the reference to Title VII with a reference to Md. Code Ann., State Gov't § 20-602 (West 2015), in an attempt to remove this Court's federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims under § 1367.  Most courts have found that Federal Rule of Civil Procedure 15(a) cannot be used to defeat federal jurisdiction.  Faye v. High's of Balt., 541 F.Supp.2d 752, 758 (D.Md. 2008) (citing cases).  The Court will, therefore, deny Goffe's request to amend her complaint and sua sponte strike the amended complaint attached to the Response (ECF No. 8-2).

## II.   DISCUSSION

**A. Standard of Review**

A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not state "a plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)) (internal quotation marks omitted), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).  In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).

**B. Analysis**

   **1. Employment Discrimination**

The Court will grant the Motion to Dismiss regarding Goffe's claim for employment discrimination.  Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1) (2012).  To survive a motion to dismiss a claim for discrimination, Goffe must allege that she was terminated or otherwise treated less favorably "because of" her race or religion.[3]  See § 2000e-2(a).

Here, Goffe alleges she was treated differently by being assigned to a new office that was separate from her department and used to store chairs and trash cans, and followed by her co-workers who documented her arrival and departure times.  She alleges, however, she was treated differently in retaliation for filing a

---

   [3] "Courts have recognized that employees may utilize [a disparate treatment theory] in asserting religious discrimination claims."  Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1017 (4th Cir. 1996).  To prove a claim of disparate treatment, an employee must first allege that the employer treated her differently than other employees because of her religious beliefs.  Id.  Thus, the complainant must put forth "a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination."  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995).

worker's compensation claim.[4] She also states in her Response to the Motion that JHHSC "acted in retaliation for her filing a Workers Compensation claim" when she was terminated. (ECF No. 8). Additionally in her Response, she states JHHSC "wrongfully terminated her based upon her illness and in violation of a contract between the parties," thereby conceding that her termination was not based on her race or religion. (Id.).

Further, Goffe alleges her performance evaluation inaccurately stated she needed improvement and she was required to complete a Fitness of Duty Evaluation. Goffe also alleges white employees were not given poor performance evaluations or required to complete a Fitness of Duty Evaluation. "[A] poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.'" James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004) (quoting Spears v. Mo. Dep't of Corr. & Human Res., 210 F.3d 850, 854 (8th Cir. 2000)). Goffe's poor performance evaluation was destroyed and her supervisor stated he would recomplete it. Because she did not have an evaluation to

---

[4] To state a Title VII claim for retaliation, Goffe must allege that: "(1) [s]he engaged in protected activity; (2) an adverse employment action was taken against [her]; and (3) there was a causal link between the protected activity and the adverse action." Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006). The plain language of Title VII limits "protected activities" to a distinct few activities: opposing an unlawful employment practice; making a charge; and testifying, assisting, or participating in a Title VII investigation. See 42 U.S.C. § 2000e-3(a). Filing a worker's compensation claim is not a protected activity under Title VII.

sign, she was required to complete the Fitness of Duty Evaluation. Based on Goffe's allegations, her evaluation was not used to alter the terms and conditions of her employment.

The Court, therefore, finds Goffe fails to state a claim under Title VII for employment discrimination. Accordingly, the Court will grant the Motion as to Count I regarding Goffe's employment discrimination claim.

**2. Hostile Work Environment**

The Court will grant the Motion to Dismiss regarding Goffe's claim for race-based hostile work environment, but will deny the Motion as to her religion-based hostile work environment claim. To state a claim for a hostile work environment, a plaintiff must plead that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's race [or religion]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." Boyer-Liberto v. Fontainebleau Corp., No. 13-1473, 2015 WL 2116849, at *9 (4th Cir. May 7, 2015) (quoting Okoli v. City of Balt., 648 F.3d 216, 220 (4th Cir. 2011)). Determining whether the environment is objectively hostile or abusive requires the Court to look at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

with an employee's work performance."  Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).

"[S]imple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  An isolated incident can be extremely serious if it amounts "to discriminatory changes in the terms and conditions of employment." Id.  In measuring the severity of harassing conduct, the status of the harasser as a supervisor may be significant because a "supervisor's power and authority invests his or her harassing conduct with a particular threatening character."  Boyer-Liberto, 2015 WL 2116849, at *10 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 763 (1998)).  Also, the harasser's status as a supervisor may cause the employer to be held strictly liable for the harasser's behavior. Id.  "The status of the harasser is also relevant to element four of a hostile work environment claim, which necessitates proof that the harassment is imputable to the employer." Id.

Goffe does not allege any harassment based on her race, however she does allege that her supervisor made comments that he was "God" and teased her for listening to gospel music.  At this stage of the litigation, the Court finds Goffe has sufficiently alleged a hostile work environment based on her religion.  Accordingly, the Court will deny the Motion to Dismiss with regard to Goffe's claim for a religion-based hostile work environment.

8

### 3. Wrongful Termination

The Court will dismiss Goffe's claim for wrongful termination. Under the Maryland worker's compensation statute, an employer may not discharge an employee solely because the employee files a workers compensation claim. Md. Code Ann., Lab. & Empl. § 9-1105(a) (West 2015). To sustain a wrongful discharge action under the statute, an employee must allege that he or she was discharged <u>solely and directly</u> because she filed for benefits under the statute or her termination violated a recognized rule of law. <u>Kern v. S. Balt. Gen. Hosp.</u>, 504 A.2d 1154, 1159 (Md.Ct.Spec.App. 1986) (emphasis added).

Though Goffe's Complaint inartfully pleads that she was constructively discharged in retaliation for filing a worker's compensation claim, she attached a letter from JHHSC to her Response to the Motion stating she was actually terminated on March 11, 2015, because she could not return to work. (ECF No. 8-3). While arguing that JHHSC terminated her in retaliation for filing a worker's compensation claim, she also argues she was terminated based on her illness. (ECF No. 8). Thus, Goffe concedes that her discharge was not based <u>solely</u> on filing the worker's compensation claim. Further, Goffe has failed to allege that her termination violated a recognized rule of law. The Court, therefore, finds Goffe has failed to state a claim for wrongful termination. Accordingly, the Court will grant the Motion to Dismiss as to Count II of the Complaint.

**4. Intentional Infliction of Emotional Distress**

The Court will dismiss Goffe's claim for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show four elements: (1) intentional or reckless conduct; (2) extreme and outrageous conduct; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. Harris v. Jones, 380 A.2d 611, 614 (Md. 1977); Arbabi v. Fred Meyers, Inc., 205 F.Supp.2d 462, 466 (D.Md. 2002).

Because IIED claims are "rarely viable," they are subject to a heightened pleading standard. Bagwell v. Peninsula Reg'l Med. Ctr., 665 A.2d 297, 319 (Md.Ct.Spec.App. 1995); see also Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby, 607 A.2d 8, 11 (Md. 1992) ("[T]he tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct."). JHHSC argues Goffe fails to plead this claim with sufficient specificity. Goffe alleges JHHSC's employees' conduct, including the handling of her worker's compensation claim, was malicious, willful, and intentional, and has caused her to suffer emotional distress. Goffe, however, alleges neither specific extreme or outrageous behavior, nor any emotional distress suffered due to JHHSC's alleged behavior. The Court will, therefore, grant the Motion to Dismiss regarding Count III.

### III. CONCLUSION

For the foregoing reasons, the Court will GRANT JHHSC's Motion to Dismiss (ECF No. 6) in part and DENY it in part. Count I regarding Goffe's claim for employment discrimination and Counts II and III are dismissed. Count I regarding Goffe's claim for religion-based hostile work environment shall remain. A separate Order follows.

Entered this 2nd day of June, 2015

/s/
_____
George L. Russell, III
United States District Judge